# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, | |
| v. | Case No. 17-CR-436 |
| LINDA NULF, | Judge Charles R. Norgle |
| Defendant. | |

## ORDER

Defendant's motion for release pending appeal [146] is denied.

## MEMORANDUM OPINION

Defendant Linda Nulf was sentenced to one year in the Bureau of Prisons and one year of supervised release after pleading guilty to participating in a fraudulent mortgage loan scheme that ultimately resulted in losses of $2,255,371. The one-year sentence was within the guideline range.[1] Defendant pleaded guilty pursuant to a plea agreement which included a waiver of appellate rights, including a waiver of the right to challenge the sentence imposed. During her change of plea hearing, prior to pleading guilty, Defendant was explicitly advised that the maximum penalty for the offense was one year, which she acknowledged. Additionally, the government emphasized to Defendant the fact that she was waiving her appellate rights, which she also acknowledged.

Defendant now seeks to be released on bond pending appeal in this case, arguing that the

---

[1] Based upon a total offense level of 23 (which includes a finding of acceptance of responsibility) and a criminal history category of I, the guideline imprisonment range, as initially calculated, was 46 months to 57 months. However, the statutorily authorized maximum sentence of one year for a misdemeanor is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment was 12 months. USSG §5G1.1(a). Upon the Court's finding of no acceptance of responsibility, the total offense level became 26 with a guideline range increased to 63 to 78 months, which likewise would be changed to 12 months given this was a misdemeanor conviction.

1

appellate waiver should be cast aside because the one-year prison term for participating in a complex fraudulent scheme resulting in losses of more than $2.5 million is a miscarriage of justice. For the following reasons, the motion is denied.

**I. Background**

On June 22, 2017, a four-count indictment was filed by a federal grand jury in the Northern District of Illinois charging Loren Steve Hunley, Defendant Linda Nulf, and Eddie Andre Pascal with bank fraud (Counts 1 and 2) and making false statements to a financial institution (Counts 3 and 4). Each of these original charges was a felony. The indictment also contained a forfeiture allegation.

On April 18, 2019, a one-count superseding information was filed charging Defendant with making false statements, a misdemeanor. Specifically, the information charged that on November 16, 2017, the Defendant, with the intent to defraud, caused to be made a false report and statement to the Department of Housing and Urban Development, namely, a loan application. Specifically, the information charged that Defendant submitted a loan application despite knowing that the applicant's income had been overstated. This helped to facilitate the purchase of 5702 South LaSalle Street in Chicago.

On April 22, 2019, Defendant appeared before the Court for a change of plea hearing. During that hearing, the Government laid out a factual basis for the charge, and the following colloquy occurred:

> MS. RICHARDSON [Prosecutor]: If this case were to proceed to trial, your Honor, the government would show beyond a reasonable doubt that on or about November 16th, 2007, in the Northern District of Illinois, Eastern Division, and elsewhere, Linda Nulf, also known as Linda Vivian, the defendant here, with the intent to defraud, caused to be made a false report and statement to and for

the Department of Housing and Urban Development, also known as HUD, namely, a loan application, which document overstated Individual A's income to facilitate the purchase of 5702 South LaSalle Street, Chicago, Illinois 60621, when in fact the defendant knew that Individual A's income was overstated, in violation of Title 18, United States Code, Section 1012.

Specifically, the government would show that beginning no later than in or around 2005, and continuing at least until in or around 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Linda Nulf, together with others, knowingly participated in a scheme to defraud financial institutions and to obtain money and funds owned by and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and concealment of material facts.

The government would also show that beginning no later than 2007, defendant, a licensed loan originator, participated in a scheme with Loren Steven Hunley and others that involved causing buyers to fraudulently obtain loans from various financial institutions to finance the purchase of residential properties. As part of the scheme, defendant knowingly submitted and caused to be submitted loan applications to lenders containing false information about, among other things, the buyers' financial condition, employment, income, assets, liabilities, and intent to occupy the properties.

To obtain the loans, defendant knowingly caused to be prepared and submitted to HUD HUD settlement statements and prepared and caused to be submitted to lenders loan applications, which contained misrepresentations regarding the buyers' financial condition, employment, income, and intent to occupy the properties.

The government would also show that in November 2007, the defendant submitted a loan application for Individual A to obtain a loan insured by the Federal Housing Authority, a division of HUD, to purchase the residence at 5702 South LaSalle Street in Chicago (the "LaSalle property") from co-schemer Hunley's company.

Specifically, defendant knowingly caused the preparation and submission of a loan application containing false information regarding Individual A's income. The loan application submitted for the purchase of the LaSalle property by Individual A falsely stated that Individual A's base employment income was approximately $4,667 per month, which defendant knew at the time was false.

> On or about November 16, 2007, Individual A purchased the LaSalle property from co-schemer Hunley's company. The government would also show that as a result of defendant's actions, the Department of Housing and Urban Development suffered losses of approximately $314,601 relating to the sale of the LaSalle property to Individual A.
>
> . . .
>
> THE COURT: Are these the facts upon which you are pleading guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: To put it another way, is that what happened, and is that what you did?
>
> THE DEFENDANT: Yes.

4/22/19 Tr. 7-10. Shortly thereafter, the Court advised Defendant that, as the written plea agreement also points out, the maximum penalty for the charged crime would be one year of imprisonment, one year of supervised release, and a number of pecuniary penalties. 4/22/19 Tr. 12. Defendant indicated that she understood these potential penalties during her change of plea hearing. Id.

Defendant also indicated during the change of plea hearing that she had had dozens of conversations with her attorney, Mr. Bischoff, about this case. 4/22/19 Tr. 14-16. Defendant indicated that she read the plea agreement and had an opportunity to discuss its terms with her attorney, including with respect to the rights she "would be giving up by pleading guilty." 4/22/19 Tr. 17. Defendant also indicated that she and her attorney both signed the plea agreement.

The agreement itself contained the following provision with respect to appellate waivers:

> **Waiver of appellate rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United

States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

R. 109 at ¶ 21(b), pp. 12-13. This plea agreement was signed by Defendant and by Defense Counsel. At the conclusion of sentencing, the Government drew additional attention to this waiver in the following sequence:

> MS. RICHARDSON [Prosecutor]: We just wanted to remind the defendant that there is also an appellate waiver on page 12. So she is waiving her right to appeal the sentence, as well as including the right she's --
>
> THE COURT: And that is in written form within the context of the entire plea agreement.
>
> MS. RICHARDSON: That's correct, your Honor, page 12.
>
> THE COURT: Mr. Bischoff, have you explained all of this to your attorney [*sic*] with respect to her rights to appeal?
>
> MR. BISCHOFF: Yes, I have, your Honor.
>
> THE COURT: All right. All said and done then, Ms. Nulf, how do you plead?
>
> THE DEFENDANT: Guilty.

4/22/19 Tr. 19-20.

On October 8, 2019, Defendant appeared before the Court again for sentencing. At sentencing, Defense Counsel argued for probation and the Government argued for a sentence of one year of incarceration. Following argument from counsel, Defendant was given the opportunity for allocution before the Court. To that point, the Court had not indicated how Defendant would be sentenced or whether she would be given credit for acceptance of responsibility. During that allocution, Defendant stated the following:

> THE DEFENDANT: Thank you. I am going to try my best to hold this together.
>
> Because this didn't go through a regular trial, I just wanted to give you an idea, I guess, of who I am, and let you know what this process -- what I have been through and kind of how I have changed through this process. The first thing I can tell you is my attorney was probably very frustrated with me. It took the better part of a year for me to be able to understand why there was criminal wrongdoing, and where my culpability was, and it was a very hard realization for me, because I tried very hard to live my life a certain way, but taking shortcuts, I did this to myself, I created this problem, and I accept responsibility and acknowledge that.
>
> This case has been -- it has obviously been financially devastated. I am 54 years old and my husband is 57. We are completely wiped out. We have a family business. My husband worked for me. My daughter worked for me. And I absolutely loved what I did. I know it doesn't seem like much being a loan officer, but I really believe I helped so many families, and I cared about the people. It was -- I didn't realize how much of my identity I put into it. So it was a devastating loss that I grieved. And I know, I have a five-year bar on this, and I am done, it is nothing that I can go back to. That -- that is -- and I can't express enough how difficult that has been on that end.
>
> I am working through all of this, and I will hopefully find something where I can do good with my knowledge and abilities, but I am still working through that.
>
> On the positive side, I do believe you have got to find the good in situations like this, and I would -- I would say that this is -- I believe that we are in the place we are for a reason, whether we understand

it or not. I believe God has me here for a reason. And I needed to make a change in my life. Maybe I wasn't going to make a change in my life and prioritize where I needed to be unless it was done for me.

And I -- I -- and on the positive side, I have definitely -- it has improved my relationship with God. I have gained some friendships that I am so grateful for, people that truly -- they are good people. I know that I need to continue in that direction with my life and make my family proud and my community proud.

I valued so much of being -- I am sorry if this is not the most articulate way of putting this, it is just being a good person is incredibly important to me. I was raised with good values and I want to be able to continue that way and be better.

I guess that is all I can say on that.

10/8/2019 Tr. 11-13. The following exchange then took place:

THE COURT: It seems to me that you have yet to acknowledge what you did.

THE DEFENDANT: I have acknowledged.

THE COURT: What did you do?

THE DEFENDANT: I didn't pay attention to what was going on and allowed -- I was very sloppy about what went in, didn't pay attention, and incorrect information went in, and that is my responsibility.

THE COURT: What did you do?

THE DEFENDANT: I did not pay attention on the loan applications and so there was incorrect information on the loan applications that were processed and closed. That is my responsibility.

10/8/2019 Tr. 13. The Court remained silent for a long pause, which is indicated as nine seconds in the transcript, before listing various holdings from the Seventh Circuit which give guidance as to when a Defendant has accepted, or failed to accept, responsibility. 10/8/2019 Tr. 13-14. The Court then ruled that Defendant had failed to accept responsibility and continued on to issue the sentence. 10/8/2019 Tr. 14. Defense Counsel did not object during the Court's statement or ask

7

the Court for additional time to allow Defendant to speak further.

As mentioned above, the final sentence was for one year in the Bureau of Prisons, restitution in the amount of $2,255,371, a $25 special assessment, and one[2] year of supervised release.

## II. Analysis

Defendant has moved for release during the pendency of her appeal pursuant to 18 U.S.C. § 3143. That provision states, in relevant part, that:

> the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>
> > **(i)** reversal,
> > **(ii)** an order for a new trial,
> > **(iii)** a sentence that does not include a term of imprisonment, or
> > **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The Court agrees with the Government that Defendant is not likely to flee or pose a danger to society. The Court does not find that an appeal in this case is for the purpose of delay. The operative question, rather, is whether an appeal raises a substantial question of law or fact likely to result in a sentence that does not include a term of imprisonment or that would be less than the

---

[2] The Court misspoke during the sentencing and stated three years of supervised release during the hearing. This was corrected on the final judgment form and the correct sentence is for one year of supervised release.

time already served once the appellate process concludes. Id. What constitutes a "substantial question" has been addressed by the Seventh Circuit. United States v. Greenberg instructs that "substantial must . . . mean close; it must mean that the appeal could readily go either way, that it is a toss-up or nearly so." 772 F.2d 340, 341 (7th Cir. 1985).

Reading Defendant's motion in the most charitable light, three issues are raised that she purports either individually or in conjunction with one another raise a substantial, or close, issue for appeal. Before Defendant can make those arguments on appeal, however, she must overcome her waiver of appellate rights, which she concedes she has waived. See Dkt. 146, at 1.

A. Defendant's Waiver of Appellate Rights Will Be Enforced

Defendant argues that the Seventh Circuit will disregard Defendant's knowing and intelligent waiver of her appellate rights[3] because enforcing the waiver would result in a "miscarriage of justice." Dkt 146, at 1 (citing United States v. Litos, 847 F.3d 906 (7th Cir. 2017)). As an initial matter, the Court is not convinced that such an exception exists as represented by defense counsel. The Seventh Circuit has declined to extend this "miscarriage of justice" language from Litos beyond "the exceptional situation in that case," where the Seventh Circuit "had already concluded in the appeals of [Litos] codefendants that restitution had been imposed improperly, and we allowed the appellant to benefit from that conclusion even though, unlike his codefendants, he had waived his right to appeal." United States v. Carson, 855 F.3d 828, 831 (7th Cir.), cert. denied, 138 S. Ct. 268, 199 L. Ed. 2d 172 (2017) (declining to extend Litos and enforcing an appellate waiver despite defendant raising an argument that his sentence exceeded the statutory

---

[3] Defendant concedes that she has waived her appellate rights. This concession is well-grounded based on this Circuit's precedent as to appellate waivers and the record in this case. See United States v. Woolley, 123 F.3d 627, 631 (7th Cir. 1997). Because Defendant has conceded that the waiver was effective, and because the Court agrees, the Court will not address the issue in depth.

allowable maximum).

Indeed, the Court has not located any other cases in which the Seventh Circuit has stated that a valid appellate waiver will be ignored where there has been a "miscarriage of justice." Out of an abundance of caution, the Court will address Defendant's argument that a miscarriage of justice has occurred, although there is no discernable standard from which to judge what a "miscarriage of justice" is in this context. Compare Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995) (a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[]" to qualify for the "miscarriage of justice" exception to the procedural bar for a second habeas petition).

Regardless of what standard applies to determine whether this case presents an "exceptional situation" or involves a "miscarriage of justice," Defendant does not and cannot meet that standard because the sentencing and the sentence imposed was procedurally and substantively proper. Thus for any standard that might apply to determine whether the appellate waiver should be set aside, Defendant must fail.

Turning to Defendant's substantive arguments, Defendant argues that the alleged miscarriage of justice springs from (1) the sentencing disparity between Defendant (who was sentenced to one year) and her co-defendant (who was sentenced to probation), and (2) the fact that Defendant was not given credit for acceptance of responsibility, which stemmed from the Court's questioning during Defendant's allocution, which, in Defendant's eyes, rendered her without the sufficient right to allocution as required under law.

The Court will address each point in turn.

> 1. The Disparity Between Defendant and Her Co-Defendant Is Substantively Justified and, Moreover, Will Be Presumed To Be Proper on Appeal Because the Sentence Is Within the Guideline.

As noted above, Defendant first argues that she should be released during her appeal because of the discrepancy between her sentence and that of her co-defendant. This discrepancy does not give rise to an "exceptional situation" or present a "miscarriage of justice," and moreover it does not present a substantial question for appeal even if the appellate waiver is ignored.

The disparity in the sentences between Defendant and her co-defendant (who received probation) is substantively justified given the record in this case. Moreover, because the Court has sentenced Defendant within the proper Guideline, the Seventh Circuit will find that the Court has necessarily given weight to avoiding unwarranted disparities (which the Court did in any event). The Defendant has thus not presented a substantial question on this issue.

As an initial matter, when the Court sentences a defendant, it is focusing on the individual before the Court and taking the necessary factors into account as to that individual. It is necessarily an individualistic process. United States v. Solomon, 892 F.3d 273, 279 (7th Cir. 2018) ("But sentencing is never abstract: the district court is required by statute to tailor its sentence to the particular defendant before it.").

Although defense counsel argued about the sentence and culpability of the co-defendant relative to Defendant, different mitigating and aggravating factors exist among the two, and, again, sentencing is individualistic, not a direct comparison or competition among co-defendants. Defendant in this case did not accept responsibility for the crime that she pleaded guilty to. Additionally, the Court noted that Defendant had been involved in a scheme that resulted in the losses of a substantial amount of money—more than $2.5 million. The Court also noted explicitly on that it had considered the need for both personal and general deterrence in this case. The Court additionally noted that it had reviewed and adopted the findings in the presentence investigation report.

In deciding this motion, this Court must make a determination as to whether Defendant has raised a substantial question for appeal. As such, the Court additionally notes that Defendant will be faced with a high bar to hurdle on this issue given that the Court has sentenced Defendant within the Guideline range. Specifically, the Seventh Circuit has held that "[a] court that sentences within a properly calculated Guidelines range 'necessarily gives weight and consideration to avoiding unwarranted disparities.'" United States v. Turner, 604 F.3d 381, 389 (7th Cir. 2010) (citations omitted).

Because the Court sentenced within the Guideline range, the Seventh Circuit on appeal would likely find that the Court has necessarily given weight and consideration to avoiding unwarranted disparities in sentences. Id.; see also United States v. Pulley, 601 F.3d 660, 668–69 (7th Cir. 2010) (affirming disparity in sentence between co-defendants and stating "a district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."); United States v. Statham, 581 F.3d 548, 556 (7th Cir. 2009) ("If a district court has correctly calculated a Guidelines range, we assume that significant consideration has been given to avoiding unwarranted disparities between sentences."); United States v. Nowicki, 870 F.2d 405, 409 (7th Cir. 1989) ("A mere showing of disparity of sentences among co-defendants does not constitute a failure to exercise discretion. United States v. Neyens, 831 F.2d 156, 159 (7th Cir.1987). If the sentencing judge gives 'thoughtful consideration' to the sentence she imposes, this court will not disturb the imposition of disparate sentences on co-defendants.").

With respect to Defendant, the probation department prepared a presentence investigation report ("PSR") that the Court reviewed prior to sentencing and adopted for purposes of sentencing. 10/8/2019 Tr. 2. The PSR, which did apply credit for acceptance of responsibility in the form of

a three-point reduction, noted that the Guideline range for Defendant was 12 months. Without the acceptance of responsibility reduction (which will be addressed below), the Guideline range would still have been 12 months. This is apparent because, but for the statutory maximum penalty of one year on a misdemeanor, the Guideline (with credit for acceptance of responsibility) would have been 46 months to 57 months. Because this was a misdemeanor, the Guideline became 12 months. When the Court found that Defendant had not accepted responsibility for her crime, the offense level became 26 (with a criminal history category of I) and the Guideline range would have become 63 to 78 months. Again, because the statutory maximum was one year on a misdemeanor, the Guideline would have dictated a 12-month sentence.

For the above reasons, Defendant has failed to raise a substantial question for appeal on this issue.

### 2. Defendant's Allocution Was Not Impermissibly Curtailed.

Defendant also argues that the Court improperly curtailed Defendant's allocution and, relatedly, improperly did not credit Defendant for acceptance of responsibility. The Court disagrees. Defendant's sentence is procedurally and substantively proper and no substantial question as to its validity exists. The one-year sentence for participating in a $2.5 million fraud scheme was well within the discretion of the Court given the record before the Court.

As an initial matter, defense counsel did not object that Defendant's allocution was cut short during the sentencing hearing. As no objection was made, the issue on appeal would be reviewed for plain error. United States v. Covington, 681 F.3d 908, 910 (7th Cir. 2012). This is yet another procedural hurdle that Defendant would need to overcome on appeal, which again cuts against the existence of a "substantial question."

Regardless, during the hearing, before the Court questioned Defendant, Defendant made a

13

statement that tended to indicate that she had completed her allocution. 10/8/19 Tr. 13 ("I guess that is all I can say on that."). She then paused. The Court then asked questions seeking to elicit statements indicating that the Defendant recognized what she had done wrong and was accepting responsibility for her role in the extensive fraud scheme. Instead, the following dialogue occurred:

> THE COURT: It seems to me that you have yet to acknowledge what you did.
>
> THE DEFENDANT: I have acknowledged.
>
> THE COURT: What did you do?
>
> THE DEFENDANT: I didn't pay attention to what was going on and allowed -- I was very sloppy about what went in, didn't pay attention, and incorrect information went in, and that is my responsibility.

10/8/2019 Tr. 13. Because this answer suggested that Defendant believed her participation in the fraud scheme and her conviction was predicated on mere negligence, as opposed to knowingly submitting falsely inflated income on loan documents, the Court, in an effort to prod the Defendant in the right direction, asked her again:

> THE COURT: What did you do?
>
> THE DEFENDANT: I did not pay attention on the loan applications and so there was incorrect information on the loan applications that were processed and closed. That is my responsibility.

10/8/2019 Tr. 13. The Court waited nearly ten seconds in silence after Defendant stated, "That is my responsibility." Although short in the grand scope of life, such a pregnant silence in a courtroom is an obvious invitation to continue speaking in light of the Court's pending question. Seeing that Defendant did not continue, the Court then began to issue a ruling. Defense counsel did not object when the Court made a finding, based on Defendant's allocution, that Defendant had not accepted responsibility. It is only after the fact that defense counsel raises an issue with

the length of the allocution—after Defendant received a punishment commensurate with participation in a $2.5 million fraud scheme (and failing to indicate that she fully took responsibility for her actions as pleaded to).

Defendant's opportunity for allocution in this case was sufficient. The Court's questioning was aimed at providing Defendant an opportunity to articulate her role in the fraud scheme. Such redirection is proper, United States v. Covington, 681 F.3d 908, 909 (7th Cir. 2012), and Defendant was given the opportunity to utter words that did not minimize her culpability and role in the scheme, which the question aimed at eliciting. Instead, Defendant initially stated that she had taken actions that essentially amounted to negligence in preparing and filing paperwork. The Court asked again. Defendant reaffirmed that she had simply been "very sloppy." In reality, Defendant knowingly falsely inflated income on loan applications in order to secure larger amounts of credit than individuals would otherwise be given, which in turn benefited her directly. See 4/22/19 Tr. 7-10. Chalking her actions up to sloppiness was dishonest and a minimization in her role in the criminal scheme.

Defense counsel now argues, after the fact, that Defendant had memorized a script and that she was getting to the point of explaining how she had accepted responsibility when the Court interrupted. It was not apparent that Defendant was speaking from memory or that she was coming to a point of accepting responsibility in the Courtroom. Rather, Defendant stated that she had said all she could say on a point, which the Court interpreted as the culmination of her allocution. As she had yet to address her acceptance of responsibility, the Court prodded her on that issue. Once she gave her answers, the Court began ruling, including on the acceptance of responsibility point, both Defendant and defense counsel remained silent. The Court was never informed that Defendant allegedly was speaking from a memorized script or that she would have liked to say

more, as she now argues only after admitting that she believed she had only been sloppy in filling out loan paperwork.

As such, no substantial question as to the sufficiency of Defendant's allocution exists.

### 3. The Court Properly Denied Credit For Acceptance Of Responsibility.

Finally, Defendant argues that Defendant should have been given credit for acceptance of responsibility. A sentencing court's acceptance of responsibility determination is a factual finding United States v. Cunningham, 103 F.3d 596, 597–98 (7th Cir. 1996). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." Id. (citing U.S.S.G. § 3E1.1, comment. (n.5), cited in United States v. Akindele, 84 F.3d 948, 956 (7th Cir. 1996)). The Court sits with "a 'front row seat' from which to assess [the defendant's] statements and demeanor." Id. (citing United States v. Taylor, 72 F.3d 533, 551-52 (7th Cir.1995) (quoting United States v. White, 993 F.2d 147, 151 (7th Cir.1993)).

"In the same way that [a] plea itself does not automatically entitle Jones to the two-level reduction, neither do bare statements to the district court at the sentencing hearing to the effect that she 'accept[s] responsibility for [her] wrongdoing.'" United States v. Jones, 52 F.3d 697, 701 (7th Cir. 1995). See also United States v. Dvorak, 41 F.3d 1215 (7th Cir. 1994) ("pat recitations of responsibility are not enough under § 3E1.1(a)").

In making the acceptance of responsibility assessment, "the sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for [her] offense in a moral sense." United States v. Hammick, 36 F.3d 594, 600 (7th Cir. 1994); see also Dvorak, 41 F.3d at 1217 ("What the sentencing judge is to look for is a defendant's demonstration of 'genuine remorse,' or 'conscience.'")

16

Defense counsel argues that Defendant, throughout the course of the sentencing, made various statements indicating that she had accepted responsibility for her crime. Specifically, defense counsel points to the following statement:

> The first thing I can tell you is my attorney was probably very frustrated with me. It took the better part of a year for me to be able to understand why there was criminal wrongdoing, and where my culpability was, and it was a very hard realization for me, because I tried very hard to live my life a certain way, but taking shortcuts. I did this to myself, I created this problem, and I accept responsibility and acknowledge that.

10/8/2019 Tr. 11. Defense counsel also points to Defendant's statement, following the Court's questioning, "I have acknowledged." 10/8/2019 Tr. 13. These are formalistic, empty expressions that do not indicate an actual acceptance of her role in the criminal scheme that resulted in more than $2.5 million in losses. Defendant pleaded guilty to knowingly inflating income on loan documents. This directly benefited her.

Defendant's unscripted answers when asked by the Court about what it was that she did clearly illustrate that she did not accept responsibility for knowingly and actively participating in a criminal fraud scheme. In her own words, Defendant attested, under oath, that she had merely failed to pay attention to what was being submitted and that she had just been "very sloppy" in her work. This indicates a clear failure to accept responsibility. See Jones, 52 F.3d at 701 (citing United States v. Dillard, 43 F.3d 299, 306 (7th Cir. 1994) (affirming denial of reduction where defendant failed to provide a complete statement of his involvement in a check cashing scheme); United States v. Linnear, 40 F.3d 215, 222 (7th Cir. 1994) (no acceptance of responsibility where defendant attempted to minimize his role in the offense); Hammick, 36 F.3d at 599-601 (affirming finding that defendant had not accepted responsibility where she failed to provide a complete explanation of how she had committed the offense of conviction); United

States v. Garcia, 35 F.3d 1125, 1133 (7th Cir.1994) (denial of reduction proper where defendant was less than truthful in describing his role in the offense); United States v. Pitz, 2 F.3d 723, 732 (7th Cir.1993) (affirming denial of reduction where defendant did not accept responsibility for his complete role in the conspiracy), cert. denied, 511 U.S. 1130, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994); Yanez, 985 F.2d at 375 (reduction appropriately denied where district judge found that defendant had been untruthful about his involvement with a drug conspiracy)).

Thus, the Court was well within its discretion to find that Defendant has failed to accept responsibility for her involvement in the fraud scheme. As such, no substantial question on this issue exists for appeal.

### 4. Defendant's Additional Arguments Are Meritless

Defendant additionally briefly argues that the Court failed to consider the 3553(a) factors in issuing the sentence in this case. The Court did consider these 3553 factors, as explicitly referenced throughout the sentencing. "If . . . the sentence imposed is within the guidelines range and is therefore presumptively reasonable, what must the judge do? We have said that in that circumstance, 'little explanation is required.'" United States v. Lenover, 182 F. App'x 563, 565 (7th Cir. 2006). In this misdemeanor sentencing, the Court drew attention to the 3553(a) factors that it found to be significant. The sentence is within the Guideline recommendation and is reasonable and substantively justified for this $2.5 million fraud misdemeanor case.

With respect to the conditions of release, defense counsel claims to have objected to conditions imposed. Defendant did submit a supplemental sentencing memorandum which contains some objections to proposed conditions of release. The Court did not adopt wholesale the recommendations and in some cases adopted defense counsel's position (with respect to community service for example). Because defense counsel did not object to conditions during the

hearing and because the present motion is vague as to what specific conditions Defendant takes issue with, this argument is utterly without merit.

**III. Conclusion**

The need for personal and general deterrence, the failure to accept responsibility, and very high dollar value at stake in this case combine to require a one-year sentence in the Bureau of Prisons followed by one year of supervised release, along with the imposed conditions of release. The sentence is just and well within the discretion of the Court. Defendant faces various the perhaps insurmountable procedural hurdle of the appellate waiver before these merits will even be considered by the Seventh Circuit.

Thus, Defendant has failed to raise a substantial question of law or fact and the motion for release is denied.

IT IS SO ORDERED.

ENTER: _____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 22, 2019